THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LLOYD PARKER, Plaintiff in Error.

*Opinion filed June 16, 1914.*

1. CRIMINAL LAW—*proof of intent is essential in assault with intent to commit murder.* To prove a charge of assault with intent to commit murder it is as essential to prove the intent as to prove the assault.

2. SAME—*when evidence does not show intent to commit murder.* Where the fight between the accused and his antagonist was a pre-arranged fight following a quarrel over a trivial matter, both parties agreeing to fight, and each fighting, so far as any witness could observe, with bare fists, the fact that the accused's antagonist was found, after the fight, to have a knife wound does not

establish an intent by the accused to commit murder, where the ac-
cused denies having used a knife or having one in his possession,
and no proof is made as to how the wound was inflicted and no
previous malice is shown.

WRIT OF ERROR to the Circuit Court of Franklin county;
the Hon. J. R. CREIGHTON, Judge, presiding.

LAYMAN & JOHNSON, and WHITLEY & COMBE, (O. J.
PAGE, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, W. F. SPILLER, State's
Attorney, and C. H. LINSCOTT, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Lloyd Parker was convicted in the circuit court of
Franklin county of an assault upon Harry Brown with in-
tent to murder and has sued out a writ of error to reverse
the judgment.

On August 15, 1913, Parker and Brown engaged in a
fist fight in the city of Benton, which lasted probably two
or three minutes, when they separated upon the command
of a constable. Brown was found to have received a stab
in the left side, between the seventh and eighth ribs, prob-
ably an inch and a half deep and a half-inch wide. A
number of by-standers saw the fight from beginning to end
but no one of them saw either of the contestants have any
weapon. Each of the fighters received blows on the head,
face and body and each was knocked to his knees in the
progress of the fight. When this occurred no attempt was
made by either to jump on the one who was down, but
when the parties were knocked apart in this way they rushed
together again and continued fighting. The combat was
vigorous and continuous from beginning to end. After the
fight a two-bladed, bone-handled pocket knife, with both
blades closed and nothing to indicate that it had been used,
was found on the ground. Parker denied that the knife

was his, that he had a knife in his possession during the fight, or that he used one. Brown testified that he had a small, bone-handled knife in his pocket during the fight but did not use it. There was no other evidence as to the ownership of the knife. Brown did not know he had a wound until after the fight was over. He was the larger man, being nearly six feet high and weighing 161 pounds, while Parker weighed 132. Brown was twenty-six years old, Parker twenty-eight. Brown was a rural mail carrier in the city of Benton. Parker was engaged in selling washing machines, and his home was in Harrisburg, in Saline county. The men quarreled about the payment for a washing machine which an agent of Parker had sold to Brown's wife, for which she had given a note. It appears indistinctly from what was said by the two men in quarreling that they had had a previous interview; that Brown had refused to pay for the machine and had sent word to Parker to come and get it; that Parker had had some disagreement with Mrs. Brown about the note and had called on Brown's father in regard to it. In the afternoon when the fight occurred Brown and Parker met on a street corner in the city of Benton and Parker demanded payment of the note. After some conversation on that subject, in which some heat was displayed and some profanity used, Brown testified that he said to Parker, "You have been talking to my father and the other fellows, and if you don't stop talking about my wife we will mix," and that Parker answered, "I am the best damned mixer on earth; we will go down right where we won't have a fine to pay." They went away together some distance to a vacant lot, where, Parker testified, Brown threw his hat on the ground, remarking profanely that his hat was always in the ring. Parker, throwing his hat on the ground, said that his was too, and the fight began. Parker denied that he used any oaths and testified that he never used profane language. He proved a good reputation as a law-abiding citizen in

Harrisburg, where he lived.   Parker was arrested a few minutes after the fight, and he showed by a prisoner in the jail that when Parker came in there was a cut in the leg of his trousers just below the pocket, which Parker testified was not there when the fight began and which he did not notice until his attention was called to it at the jail.

We regard this evidence as insufficient to justify a conviction of assault with intent to commit murder.   It is as essential in such a charge to prove the intent as to prove the assault and to prove it with the same certainty.   Here was a mutual assault.   The parties agreed to fight.   No one knows who struck the first blow, and it is immaterial. Each party was guilty of the assault.   No one knows the actual circumstances under which the wound was received. There were many witnesses, not far away, who were watching the fight, several of whom say that they saw every blow that was struck.   The men were fighting with bare fists, apparently empty-handed, and no one saw any weapon used or suspected that one was used.   Brown received the wound, but how or with what weapon does not appear. The quarrel about the note, resulting in the invitation to fight and its acceptance, was trivial.   No previous malice is shown, and certainly nothing which would justify the inference that Parker, at the beginning of the fight, intended to murder Brown or afterward had such intention. Brown's wound was not serious, and we are satisfied from the lack of evidence of malice or premeditation, or of circumstances from which malice or premeditation may be inferred, that there is such a serious and well founded doubt of the existence of the specific intent, which is essential to the crime of which Parker was convicted, as requires the reversal of the judgment.

There was no error in the admission or rejection of evidence and no such error in the giving or refusal of instructions as would require the reversal of the judgment.

*Judgment reversed.*